CHARLES W. BATTLE, PLAINTIFF-RESPONDENT, v. THE GENERAL CELLULOSE COMPANY, INC., A CORPORA- TION OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued January 28, 1957.—Decided March 11, 1957.

Mr. *Harry A. Margolis* argued the cause for defendant-appellant (*Mr. Max L. Rosenstein,* attorney; *Mr. Harry A. Margolis,* on the brief).

Mr. *Robert Schur,* of the New York Bar, argued the cause for plaintiff-respondent (*Messrs. Leavitt, Talley & Krevsky,* attorneys; *Mr. Fayette N. Talley,* of counsel; *Mr. Robert Schur,* of the New York Bar, on the brief).

The opinion of the court was delivered by

WEINTRAUB, J. Plaintiff obtained an arbitration award against defendant in New York City and a judgment thereon in the Supreme Court of New York. He then sued here upon the New York judgment and prevailed on a motion for summary judgment. Defendant appealed to the Appellate Division and we certified on our own motion.

The controversy arose out of an agreement of employment. Plaintiff commenced work on November 2, 1952, as defendant's vice-president and general manager. The terms of employment had not yet been fixed and discussions continued for some period. On January 8, 1953 defendant sent to plaintiff its letter of that date outlining the terms of employment for a year beginning November 1, 1952.

Defendant discharged plaintiff on July 10, 1953. Plaintiff instituted the arbitration proceedings under the following provision of the letter of January 8, 1953:

"Any controversy or claim arising out of or relating to this agreement or breach thereof, shall be settled by arbitration according to the rules of the American Arbitration Association."

The employment was contracted in New Jersey and was to be performed here. Plaintiff lived in this State when he was employed and continued to live here until after his discharge when he moved to Indiana, and was a resident of that State when he instituted the arbitration proceedings. Defendant is a corporation of the State of New Jersey and was not subject to service of process within the State of New York.

Defendant declined to participate in the arbitration proceedings or to respond to notice by mail of the application to enter judgment upon the award. In fact, defendant denied the existence of the contract and advised the American Arbitration Association at once that it disputed its authority to proceed with arbitration until the existence of the alleged contract was first determined in judicial proceedings in New Jersey. Neither party sought to litigate that question before arbitration. Plaintiff acted on his thesis that he was entitled

to proceed under the rules of the Association, while defendant rested on its conviction that the award and judgment would be nullities.

## I.

Defendant claims a triable issue of fact was raised with respect to the existence of the contract. With this we agree for reasons set forth in II below. But defendant contends further that even if there was a contract to arbitrate, yet (a) the award was a nullity because the arbitration proceeded in the face of defendant's denial of an agreement to arbitrate and without a prior judicial determination that there was such an agreement, and (b) the New York judgment is not entitled to full faith and credit because the New York court lacked jurisdiction of the person. Upon the hypothesis that the contract in question was made, neither contention is valid.

## A.

The rules of the American Arbitration Association, by which on the stated hypothesis the parties agreed to abide, provide complete machinery for the designation of arbitrators and the place of arbitration if the parties fail to express their preferences. Defendant having declined to participate, the arbitrators were selected and the Administrator of the Association designated New York City as the place for the arbitration. The rules provide for notice by mail with respect to all steps from commencement of the proceeding through the award, and the record establishes clearly that defendant received the prescribed notices.

Defendant contends that under the law of New Jersey arbitration may not be had if the existence of the contract is denied, unless there is a judicial determination that the arbitration proceed. We need not consider whether the law of New Jersey or of New York controls (see *Sonotone Corporation v. Hayes,* 4 *N. J. Super.* 326 (*App. Div.* 1949)) since the same result must be reached upon either approach.

*N. J. S.* 2A:24–1 provides that

"A provision in a written contract to settle by arbitration a controversy that may arise therefrom or a refusal to perform the whole or a part thereof * * * shall be valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of a contract."

The New York statute, from which our act was substantially taken, is to the same effect. New York Civil Practice Act, §§ 1448–9; *Helen Whiting, Inc., v. Trojan Textile Corp.,* 307 *N. Y.* 360, 121 *N. E.* 2d 367 *(Ct. App.* 1954). Hence a mere denial of the agreement cannot operate to terminate it. Defendant urges, however, that *N. J. S.* 2*A* :24–3 requires an order to arbitrate where the existence of a contract is disputed. It reads:

"Where a party is aggrieved by the failure, neglect or refusal of another to perform under a written agreement providing for arbitration, the superior court, or the county court of the county where either party resides, may in a summary action direct that the arbitration proceed in the manner provided for in the agreement. The party alleged to be in default may demand a jury trial as to the issue that there has been no agreement in writing for an arbitration or that there has been no failure to comply therewith."

This section will not stand the construction defendant suggests. It is designed to afford a remedy where the terms of the arbitration agreement are such that its performance may be frustrated by the refusal of a party to proceed under it, as for example where a party refuses to designate an arbitrator and the agreement fails to provide machinery for going forward in that situation. In the words of the section, it is available "where a party is aggrieved by the failure, neglect or refusal of another to perform under a written agreement." It affords a remedy if one is needed. But when, as here, the agreement provides for the arbitration to proceed notwithstanding the refusal of a party to participate, nothing in our law requires the demandant in the arbitration to seek preliminarily an adjudication that he has the contractual right. The one who denies the existence of the contract may seek a judicial determination upon an application to stay the arbitration

or upon a proceeding to enforce the award. If he chooses to ignore the arbitration and await an action upon the award, he takes the risk of a determination that he was obligated to arbitrate and hence is bound by the award.

Defendant claims support in *California Lima Bean Growers Association v. Mankowitz,* 9 *N. J. Misc.* 362, 154 *A.* 532 (*Cir. Ct.* 1931), and *Stein v. Local 680 of the Milk Drivers and Dairy Employees of New Jersey,* 141 *N. J. Eq.* 226 (*Ch.* 1948). In *California Lima Bean Growers Association* the claimed agreement provided " 'All disputes arising hereunder shall be arbitrated before the Dried Fruit Assn. of N. Y.' " Plaintiff presumably needed the assistance of the court because of the defendant's refusal to arbitrate, and hence made the application. The court held only that since defendant raised an issue of fact as to the existence of the contract, the issue would be triable under the provision of the statute quoted above. There was no intimation that plaintiff could not have proceeded without a court order if the contract had provided the necessary technique.

In *Stein* the award was declared void because the arbitrator and defendant proceeded in the face of an injunction enjoining the arbitration and also because of an unwarranted refusal by the arbitrator to postpone the hearing, a ground for vacating an award under *N. J. S.* 2A:24–8, *subd. c.* There is some language in the opinion which might be read to further defendant's position here, but if such was its intended purport, it is without support in the statute or sound decisional law.

A similar provision of the Federal Arbitration Act (9 *U. S. C. A.,* § 4) has likewise been construed to permit, but not to require, a party demanding arbitration to seek an order in these circumstances. *Kentucky River Mills v. Jackson,* 206 *F. 2d* 111, 47 *A. L. R. 2d* 1331 (6 *Cir.* 1953), *certiorari* denied 346 *U. S.* 887, 74 *S. Ct.* 144, 98 *L. Ed.* 392 (1953); *Kanmak Mills, Inc., v. Society Brand Hat Co.,* 236 *F. 2d* 240 (8 *Cir.* 1956). See also *International Brotherhood of Teamsters, etc. v. Shapiro,* 138 *Conn.* 57, 82 *A. 2d* 345 (*Sup. Ct. Err.* 1951).

The New York statute is explicit. Section 1458 of the Civil Practice Act provides an award shall be valid and enforceable "without previous adjudication of the existence of a  *  *  *  contract to arbitrate," and authorizes a party who denies the existence of the contract to raise the issue either by a motion to stay the arbitration or on opposition to the confirmation of the award. See *Finsilver, Still & Moss, Inc., v. Goldberg, Maas & Co., Inc.,* 253 *N. Y.* 382, 171 *N. E.* 579, 69 *A. L. R.* 809 (*Ct. App.* 1930), and *Gantt v. Felipe Y. Carlos Hurtado & Cia.,* 297 *N. Y.* 433, 79 *N. E. 2d* 815 (*Ct. App.* 1948).

## B.

Assuming the award was binding, defendant says that nonetheless the judgment of the New York court is not enforceable here because service of the notice was made by mail addressed to defendant in New Jersey. We need not consider whether under the New York statute or under controlling principles of constitutional law New York could thus obtain jurisdiction *in personam* on the basis of an agreement to arbitrate in New York, without more. See Weiss, *"Arbitration Award and the Non-Resident: Nuance in New York."* 48 *Col. L. Rev.* 366 (1948). The *in personam* jurisdiction of the New York court may here be rested on the voluntary agreement of defendant. *Matter of Liberty Country Wear, Inc.,* 197 *Misc.* 581, 96 *N. Y. S. 2d* 134 (*Sup. Ct.* 1950); *Merger Fabrics, Inc., v. Coill-Shuman Co.,* 74 *N. Y. S. 2d* 76 (*Sup. Ct.* 1947).

██ Rule 30 of the Association by which the parties contracted to be bound provides:

"Serving of Notices—Each party to a Submission or other agreement which provides for arbitration under these Rules shall be deemed to have consented and shall consent that any papers, notices or process necessary or proper for the initiation or continuation of an arbitration under these rules and for any court action in connection therewith or for the entry of judgment on any award made thereunder may be served upon such party (a) by mail addressed to such party or his attorneys at his last known address or (b) by personal service, within or without the state wherein the arbitration

is to be held (whether such party be within or without the United States of America) ; provided that reasonable opportunity to be heard with regard thereto has been granted such party."

The intendment of this rule is that an action on the award may be brought in the state wherein the arbitration was held and that process may be served either by mail or personally outside that state. The State of New York having been fixed as the place for arbitration in accordance with another rule by which defendant bound itself, defendant must be held to have agreed that an action on the award may be brought in New York and service of process made in accordance with Rule 30. *Bradford Woolen Corporation v. Freedman,* 189 *Misc.* 242, 71 *N. Y. S.* 2d 257 *(Sup. Ct.* 1947). There is no basis for disputing that the notice given pursuant to the rule in fact afforded "reasonable opportunity to be heard." See *Republique Francaise v. Cellosilk Manufacturing Co.,* 309 *N. Y.* 269, 128 *N. E.* 2d 750 *(Ct. App.* 1955).

It is well settled that a personal judgment may be rendered against one who is neither served with process in the state nor domiciled in nor a citizen of the state if he consents to jurisdiction over him. Consent may be given in advance of the controversy, and if the terms of the consent are met, the judgment is binding and entitled to full faith and credit. *Hazel v. Jacobs,* 78 *N. J. L.* 459 *(E. & A.* 1910) ; *Grover & Baker Sewing Machine Co. v. Radcliffe,* 137 *U. S.* 287, 11 *S. Ct.* 92, 34 *L. Ed.* 670 (1890) ; *Wilson v. Seligman,* 144 *U. S.* 41, 12 *S. Ct.* 541, 36 *L. Ed.* 338 (1892) ; *De Dood v. Pullman Co.,* 57 *F.* 2d 171 (2 *Cir.* 1932) ; *Gilbert v. Burnstine,* 255 *N. Y.* 348, 174 *N. E.* 706, 73 *A. L. R. (Ct. App.* 1931) ; *Republique Francaise v. Cellosilk Manufacturing Co., supra* (309 *N. Y.* 269, 128 *N. E.* 2d 750) ; *Restatement, Conflict of Laws* (1934), §§ 81, 90 ; *Goodrich, Conflict of Laws* (3d ed. 1949), § 73, *pp. 198–9.*

Defendant stresses the hardship which might conceivably have ensued had the place of arbitration been fixed at a more distant point. But the answer is that defendant

need not have contracted to arbitrate at all, or could have specified in the agreement that New Jersey be the situs of the arbitration or the suit on the award or both. Instead, defendant agreed to arbitrate outside this state by its unqualified acceptance of the rules of the Association. Defendant was free so to agree. No public policy of this State or of New York was thereby offended. *California Lima Bean Growers Association v. Mankowitz, supra* (9 *N. J. Misc.* 362, 154 *A.* 532); *Gilbert v. Burnstine, supra* (255 *N. Y.* 348, 174 *N. E.* 706, 73 *A. L. R.* 1453); *cf. Greter v. Davies,* 30 *N. J. Super.* 60 (*Ch. Div.* 1954), affirmed 31 *N. J. Super.* 402 (*App. Div.* 1954). The question whether a controversy between non-residents should be entertained by New York concerns only that state and it is willing, as here, to implement the agreement. *Gantt v. Felipe Y. Carlos Hurtado & Cia., supra* (297 *N. Y.* 433, 79 *N. E. 2d* 815); *Republique Francaise v. Cellosilk Manufacturing Co., supra* (309 *N. Y.* 269, 128 *N. E. 2d* 750).

■ It accordingly has been held elsewhere that a judgment entered in New York upon an award in circumstances essentially indistinguishable from those of the present case is entitled to full faith and credit, and we agree. *Tanbro Fabrics Corp. v. Hymen,* 341 *Ill. App.* 396, 94 *N. E. 2d* 93 (*App. Ct.* 1950); *Mulcahy v. Whitehill,* 48 *F. Supp.* 917 (*D. C. D. Mass.* 1943); *Marvlo Fabrics v. Jarus,* 87 *F. Supp.* 245 (*D. C. W. D. Mo.* 1949); *Ripley Fabrics Corporation v. Hymen,* 91 *F. Supp.* 1007 (*D. C. N. D. Ill.* 1950); *Hirsch Fabrics Corp. v. Southern Athletic Co., Inc.,* 98 *F. Supp.* 436 (*D. C. E. D. Tenn.* 1951); see *Jackson v. Kentucky River Mills,* 65 *F. Supp.* 601, 604 (*D. C. E. D. Ky.* 1946).

## II.

The critical question, accordingly, is whether an agreement to arbitrate was in fact made. If it was not, there would be no prop to support the award and the New York judgment, and plaintiff would be remitted to the basic claim which he asserted in the arbitration proceeding.

Defendant conceded that it sent the letter of January 8, 1953. In his affidavit on the motion plaintiff said "I notified Mr. Taggert [signatory on defendant's letter] of my acceptance of this document and I worked for the defendant under the said agreement until my discharge." Taggert's affidavit stated:

"Plaintiff never notified me or the company of the acceptance of the terms suggested generally in that memorandum of our verbal conversation of a day or so previous, which conversation resulted in nothing any more definite than our previous conferences and exchanges. The suggested arrangement was never formalized, nor reduced to legal or definitely worded terms, nor was it acted upon. As its wording indicates there were still questions to be settled. * * * Plaintiff requested me to write out the proposed terms as I wished them, for his further comments, which were never forthcoming."

Following argument on cross-motions for summary judgment, an order was made granting defendant leave to file a counterclaim and denying the motions "subject to being renewed without further oral argument by counsel and without the necessity for formal motions thereon and are to be submitted to the Court on the basis of a contention of fact submitted to the Court by the parties herein."

We gather the trial court felt Taggert's affidavit to be too vague and hence requested greater factual detail. The course thus pursued is eminently sound when a court feels that greater particularization will reveal whether a genuine issue of fact exists. Counsel for defendant apparently understood the details were to be furnished by letter and a week after the order submitted his letter to the court. The letter was furnished us in a supplemental appendix with the reply brief and plaintiff did not challenge the representation that it was sent.

The letter incorporates what has been related above, and adds a proffer to prove that following receipt of the letter of January 8 plaintiff expressed "his complete dissatisfaction with Taggert's proposals" and expressly stated that he rejected them; that the negotiations "continued on through the month of January, 1953, were in fact in the negotiation stage when the employment of the plaintiff was terminated." It does

not appear that the trial court rejected these representations for want of verification under oath, nor did plaintiff suggest to us that his understanding of the court's directions differed from that held by defendant.

It seems to us that a triable issue of fact exists. There are a number of undisputed circumstances which may be deemed to speak with great strength in favor of plaintiff's position. The letter of January 8 opens with a statement that "In accordance with our conversation of yesterday, I'm writing you this letter to cover our mutually agreeable thoughts on an arrangement between us." Plaintiff received the same monthly salary, performed the same duties, and received the same "termination" payment provided in the letter of January 8. Prior to discharging plaintiff, defendant asked him to resign which plaintiff declined to do. These admitted circumstances, however, are not necessarily incompatible with defendant's position that plaintiff refused to accept and in fact rejected the written proposal and that negotiations continued thereafter. Especially is this true with respect to the crucial question whether the parties agreed to arbitrate any controversy which might arise. That covenant is of paramount significance under the circumstances of this case.

A motion for summary judgment is not a substitute for a plenary trial. Where the motion turns on whether there is a genuine issue of fact, it must be denied unless the absence of such issue clearly appears. *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N. J.* 67 (1954) ; *Monmouth Lumber Co. v. Indemnity Insurance Co. of North America,* 21 *N. J.* 439 (1956).

The judgment is accordingly reversed and the cause remanded for further proceedings not inconsistent with this opinion with respect to the issue whether there was a written contract to arbitrate, costs to abide the event.

*For reversal*—Justices OLIPHANT, BURLING, JACOBS and WEINTRAUB—4.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER and WACHENFELD—3.